UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

| | |
|---|---|
| BRII COLEMAN,<br><br>   Plaintiff,<br><br>v.<br><br>NAVIENT SOLUTIONS, LLC,<br><br>   Defendant. | Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. TELEPHONE COMSUMER PROTECTION ACT, 47 U.S.C. § 227, *et seq.*<br>2. FLORIDA CONSUMER COLLECTION PRACTICES ACT, Fla. Stat. §§ 559.55- 559.785 |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**COMES NOW**, Plaintiff, Brii Coleman, ("Plaintiff"), by and through the undersigned counsel, and hereby brings this Complaint and Demand for Jury Trial ("Complaint") against Defendant, Navient Solutions, LLC ("Navient" or "Defendant") alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. §§ 559.55- 559.785, ("FCCPA").

**INTRODUCTION**

1. Plaintiff's first cause of action arises out of the TCPA. The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

2. The TCPA specifically prohibits any person "to make any call (other than for emergency purposes or made with the prior consent of the called party) using any automatic telephone

dialing system or any artificial or prerecorded voice – (iii) to any … cellular telephone service…or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A). Such calls are commonly referred to as "robocalls."

3. The TCPA was enacted by Congress in response to an increasing number of consumer complaints about telemarketer and debt collector phone calls.

4. In 2017, there were over 4,000,000 complaints reported to the Federal Communications Commission ("FCC") and the Federal Trade Commission ("FTC") regarding robocalls-- 4,501,967 to be exact.[1] It is important to recognize that this only reflects the number of individuals that actually made a complaint to these agencies. There are likely many violations that were never reported.

5. In June 2017, the National Consumer Law Center and other non-profits representing consumers requested an enforcement action by the FCC specifically against Navient for "deliberately engag[ing] in a campaign of harassing and abusing consumers through the use of repeated, unconsented-to-robocalls, calling consumers' cell phones hundreds, and—in some cases—thousands of times *after* being asked to stop."[2] The request further states: "It appears that many—perhaps all—of Navient's violations are the result of a deliberate decision to flout the TCPA." *Id*.

6. In addition to the "18,389 complaints reported to the Consumer Financial Protection Bureau ('CFPB') just about Navient's practices" between 2014 and 2017, student loan borrowers (including Plaintiff) also filed 1,878 complaints to the Better Business Bureau

---

[1] *National Do Not Call Registry Data Book FY 2017,* Federal Trade Commission (December 2017), https://www.ftc.gov/sites/default/files/filefield_paths/dnc_data_book_fy2017.pdf.

[2] *Request that the FCC initiate enforcement action against Navient Solutions, LLC for massive and continuous violations of the Telephone Consumer Protection Act against student loan debtors*, National Consumer Law Center, et al. (June 12, 2017), https://www.nclc.org/images/pdf/robocalls/enforcement-letter-tcpa-fcc.pdf.

("BBB") about Navient." *Id*.

7. The Plaintiff's second cause of action arises out of the FCCPA. The FCCPA is intended to prohibit creditors and third-party debt collectors from engaging in abusive, deceptive and unfair collection practices.

8. Plaintiff alleges that Defendant unlawfully called her cellular telephone in an attempt to collect an alleged debt in violation of the aforementioned statutes.

## PARTIES

9. Plaintiff is an individual and natural person, who resides in, and at all times relevant, resided in Polk County, Florida. Upon information and belief, a number of the calls from Defendant came in to the Plaintiff's cellular phone while she was traveling in the Southern District of Florida.

10. Plaintiff is a "consumer" as that term is defined by Fla. Stat. § 559.55(8).

11. The debt in question is a "consumer debt" as defined by § 559.55(6).

12. Plaintiff has standing to bring a claim under the TCPA and FCCPA because she has been directly affected by the Defendant's violations of these statutes.

13. Defendant, Navient Solutions, is a financial institution with its principal place of business located at 2001 Edmund Halley Drive, Reston, VA 20191 and can be served with process through its registered agent, Corporation Service Company, 100 Shockoe Slip, 2nd Floor, Richmond, VA 23219.

14. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, suborgees, representatives, and insurers.

15. Defendant was and is a "person" as said term is defined under Florida Statute § 1.01(3) and is subject to the provisions of Fla. Stat. § 559.72 because said section applies to "any

person" who collects or attempts to collect a consumer debt as defined in Fla. Stat. § 559.55(1).

## JURISDICTION AND VENUE

16. This Court has original jurisdiction over this action pursuant to and 28 U.S.C. §§ 1331 and 1337(a), in that this action arises under a United States federal statute, specifically the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"). Also, the TCPA specifically authorizes this Court to exercise jurisdiction under 47 U.S.C. § 227(g)(2).

17. Plaintiff also brings this complaint under federal diversity jurisdiction, 28 U.S.C. §1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

18. This Court has personal jurisdiction over Defendant because Defendant regularly does business in this District, and Defendant maintains systematic and continuous business contacts with this State.

19. Pursuant to 28 U.S.C. § 1367(a) this Court also has supplemental jurisdiction over the Plaintiff's state-law FCCPA claim in that it is so related to the federal TCPA claim that they form part of the same case or controversy under Article III of the United States Constitution.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and/or (b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District. Defendant's unlawful communications were made to a mobile telephone number registered in this District, and Defendant's unlawful communications were received by Plaintiff in this District.

## FACTUAL ALLEGATIONS

21. Defendant called Plaintiff on Plaintiff's cellular telephone approximately five-hundred (500) times from at least twenty (20) different phone numbers in an attempt to collect on a debt after Plaintiff unequivocally revoked consent in writing (and multiple times thereafter verbally) for Defendant to ever call her again.

22. The debt arises from an alleged private student loan (Loan No. x6459) incurred by Plaintiff for personal, family or household purposes.

23. Upon information and belief, Defendant, by and through its agents, representatives, and/or employees acting within the scope of their authority, attempted to collect on a debt by using an "automatic telephone dialing system" (hereafter "ATDS") to place numerous calls to Plaintiff's cellular telephone, referenced by telephone number (860) xxx-5532.

24. By using such equipment, Defendant was able to make incessant automated calls to the Plaintiff's cellular phone.

25. Upon answering any of Defendant's calls, Plaintiff was greeted by a noticeable period of silence or "dead air" before the Plaintiff was connected to a live person.

26. This period of silence is a characteristic of calls made using a predictive dialer or other automated phone systems.

27. The FCC stated that "a predictive dialer falls within the meaning and statutory definition of "automatic dialing equipment" and the intent of Congress." *Id*. At 14091-92, paras. 132.-133. "In attempting to 'predict' the average time it takes for a consumer to answer the phone and when a telemarketer will be free to take the next call, predictive dialers may either 'hang-up' on consumers or keep the consumer on hold until connecting the call to a sales representative, resulting in what has been referred to as 'dead air.'" 2003 TCPA

Order, 18 FCC Rcd at 14101-02, para. 146. *See also id.* at n.502.

28. In or around January 2017, Defendant or an agent identifying itself as Defendant Navient began placing calls to Plaintiff's cellular telephone from an ATDS, in an attempt to collect an alleged debt.

29. None of the calls made by Defendant to Plaintiff's cellular phone number were made for an emergency purpose.

30. Defendant called Plaintiff's cellular phone, x5532, from the following twenty (20) numbers: (607) 271-6214, (607) 271-6456, (888) 272-5543, (615) 432-4232, (716) 707-3299, (607) 271-6203, (607) 271-6207, (716) 707-3377, (302) 401-4399, (513) 770-1371, (570) 904-8749, (512) 354-2003, (615) 432-4231, (513) 914-4615, (607) 271-6199, (765) 283-3373, (513) 914-4621, (607) 821-4204, (513) 770-1380, and (513) 770-1374 in an attempt to collect on a debt.

31. Upon information and belief, these numbers are owned or operated by Defendant, its agents, or representatives. The list of phone numbers may not include other numbers from which Defendant may have called Plaintiff.

32. On or about April 28, 2017, Plaintiff had become so frustrated from the harassing calls she kept receiving from Defendant that she filed a written Better Business Bureau ("BBB") complaint against Defendant Navient hoping to end the upsetting calls to her cellular phone.

33. In the BBB complaint, Plaintiff stated that she had been struggling to make the $216.00 monthly payments to Navient since she had become unemployed in June 2016 when her elementary school teaching contract was not renewed, leaving her unemployed.

34. Thereafter, she could not afford to complete her teacher certification, so she had to work as

a substitute teacher making only half what she previously made. Leftover unemployment checks helped her stay current until January 2017, when she was forced to go on a repayment for her credit cards and begin food stamps.

35. Plaintiff further stated that she spoke with Navient representatives every month but Navient "would not provide any financial hardship programs and insisted their repayment plan would only go down to $195 even though when they calculated my income it was clear I could not afford it."

36. At times when Plaintiff answered a call from Navient, the representative would ask Plaintiff if Navient could call her at x5532, and she usually replied "No."

37. In Plaintiff's BBB complaint, she explained that she advised Navient many times that she was "trying to get a new job with no luck," and she was either "mocked, yelled at or hung up on" by the Navient representative.

38. As Plaintiff wrote, Navient told Plaintiff to ask her family for money several times.

39. According to Plaintiff's BBB complaint, on or about April 28, 2017, Navient called Plaintiff and the representative told her to "sell my car or not pay my car payment so I could pay Navient." She explained that without a car, she would not be able to work and earn money.

40. In the "Desired Outcome" section of Plaintiff's BBB complaint, she wrote: *"Lastly, I request Navient stops harassing me with phone calls 4 times a day, hanging up half the time, and talking to me as if I am a liar or dumb."*

41. On or about May 9, 2017, Navient sent Plaintiff a written response to her BBB complaint.

42. In the letter, Navient explained that while it does offer forbearance to postpone payments on private loans, it limits the time for allowable voluntary forbearance to twelve (12) total

months, and Plaintiff had "used all the forbearance time available to [her]."

43. Navient also stated that it had confirmed Plaintiff had qualified in March 2017 for a Rate Reduction Program ("RRR") of $192.79; however, that amount was just as unaffordable to Plaintiff as $216.00 per month.

44. Navient stated it had cancelled the RRR payment per Plaintiff's instructions, but that the RRR was the "lowest payment option available" to her for a private loan.

45. Navient qualified Plaintiff to pay only $12.25 per month total for the other nine (9) non-private student loans she consolidated with Navient, which she is able to keep current.

46. Regarding Plaintiff's complaints about the harassing phone calls, Navient stated the following: "As a matter of explanation, our calls are intended to help customers avoid late fees and negative credit reporting, and are not intended to harass. When a payment is not received by the due date, we attempt to resolve the delinquency by making contact through phone calls and letters, intended to remind you of your obligation, help you avoid negative consequences of missing a payment, and inform you of the options available to help you fulfill their obligation. Our attempts to contact you may occur more than once per day but will stop for that day if contact is made."

47. Plaintiff had already missed many payments, so the incessant calls were *not* to help her "avoid the negative consequences of missing a payment" or "late fees" or "negative credit reporting;" Plaintiff had already experienced all of those issues and she did not need to be harassed multiple times per day regarding her payment obligation.

48. Plaintiff then responded to Navient's letter through the BBB by declaring that her complaint was "Not Resolved."

49. Plaintiff stated that "Navient did not provide any available options other than paying an

amount that they know I cannot afford. They ignore the fact that my financial status is poverty at this time and *continue to call me with negativity* as if it is my choice not to pay the loan." . . . "They speak to me like I am a criminal and say things like and I quote, 'I do not understand how you are not paying, you just don't want to pay anything, the loan is not going to go away just because you do not pay, and that it would be better to not pay rent, car or other bills than to have my loan go into default."

50. Plaintiff noted that Navient's response stated Navient "will continue to call more than once a day." She added that "Nothing has been resolved and I fear every time I pick up the phone that I will be disrespected, and no one will try to find an option that reflects my actual disposable income."

51. Since Defendant called from at least twenty (20) different numbers, Plaintiff did not always know who was calling and had to answer since Navient would often hang up and not leave a message if there was no answer. When Plaintiff did answer a call from Navient and Navient asked if it could call her at that number, she usually replied "No."

52. However, Navient continued calling Plaintiff's cellular phone, as frequently as six (6) times per day from 8:00 a.m. until 9:00 p.m. Some calls were only a minute or two apart.

53. On or about January 22, 2018, Plaintiff was frustrated from answering and hearing a long pause of "dead air," so she called Navient at (888) 272-5543 and reached a pre-recorded message from Navient before speaking with a representative.

54. During that call, Plaintiff verified her identify and *again* unequivocally revoked consent for Navient to call her anymore.

55. However, Plaintiff again continued to receive calls from Navient after her revocation, often four (4) or five (5) or six (6) times per day.

COMPLAINT AND DEMAND FOR JURY TRIAL

56. Defendant used many different numbers to reach Plaintiff in order to trick her into answering its unwanted phone calls.

57. Between May 2017 and November 2018, Defendant called Plaintiff on Plaintiff's cellular telephone approximately five-hundred (500) times in an attempt to collect on a debt from Plaintiff *after* Plaintiff's written and numerous verbal unequivocal revocations of consent for Defendant to call her cellular phone.

58. Plaintiff received Defendant's calls during work hours, and they were very disruptive to her.

59. Each and every call required Plaintiff to answer or silence her phone causing her anxiety and stress.

60. All calls made by Defendant to Plaintiff's cellular telephone number were made without consent, and they were made after Plaintiff expressly instructed Defendant not to call her again.

61. Plaintiff takes daily medication for anxiety and has periodic anxiety attacks. The phone calls from Defendant were especially distressing and caused her significant emotional distress.

62. Plaintiff felt harassed and threatened by Defendant, who acted as though she was lying about how much money she had, which really upset her.

63. Each time Plaintiff's phone rang, she would feel an overwhelming sense of anxiety and frustration. Plaintiff felt she had no control over the barrage of calls to her since Defendant refused to stop no matter how many times she requested.

64. Defendant's conduct was not only willful but was done with the intention of causing Plaintiff such distress as to induce and harass her to pay the debt. Defendant's

phone calls were an annoyance and caused Plaintiff to suffer from stress, frustration, severe anxiety, and embarrassment at work and at home.

65. Defendant's phone calls also harmed Plaintiff by wasting her time.

66. Defendant's phone calls also harmed Plaintiff by causing general wear and tear to her cellular telephone and depleting the battery life on her cellular telephone.

67. Defendant's phone calls deprived Plaintiff of the opportunity to make or receive other phone calls using her cellular telephone while Defendant was repeatedly calling her several times a day.

## FIRST CAUSE OF ACTION
## TELEPHONE CONSUMER PROTECTION ACT,
## [47 U.S.C. § 227, et seq.]

68. Plaintiff incorporates by reference the foregoing paragraphs of this complaint as if fully stated herein.

69. Defendant utilized an ATDS in an attempt to collect a debt from Plaintiff on her cellular telephone number.

70. Within four years prior to the filing of this action, on multiple occasions, Defendant willfully and/or knowingly contacted Plaintiff on Plaintiff's cellular telephone using at ATDS after Plaintiff notified the Defendant to stop calling her.

71. Within four years prior to the filing of this action, Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an ATDS or pre-recorded or artificial voice without prior express consent in violation of TCPA 47 U.S.C. § 227 (b)(1)(A)(iii).

72. As a result of Defendant's violations of 47 U.S.C. § 227, Plaintiff is entitled to an award of five hundred dollars ($500.00) in statutory damages, for each and every call, in violation of

the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

73. As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiff is entitled to treble damages up to $1,500 for each and every call, in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(C).

## SECOND CAUSE OF ACTION
## FLORIDA CONSUMER COLLECTION PRACTICES ACT
### [Fla. Stat. § 559.72 et seq.]

74. Plaintiff incorporates by reference the paragraphs one (1) through sixty-six (66) of this complaint as if fully stated herein.

75. The FCCPA was enacted to protect Florida consumers from creditors and debt collectors who seek to collect debts through illegal and harassing means.

76. At all times relevant to this action, Defendant is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

77. Defendant violated FCCPA 559.72(7) by willfully calling the Plaintiff many times a day on consecutive days, after Plaintiff asked Defendant to stop calling multiple times. The frequency of Defendant's calls would reasonably be expected to harass the debtor or any member of her family.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Brii Coleman respectfully requests judgment be entered against Defendant, Navient, for the following:

A. Statutory damages of $500.00 for each and every negligent violation of the TCPA pursuant to 47 U.S.C. § (b)(3)(B);

B. Statutory damages of $1500.00 for each and every knowing and/or willful violation of the TCPA pursuant to 47 U.S.C. § (b)(3)(B) and 47 U.S.C. § (b)(3)(C);

C. Declaratory judgment that Defendant violated FCCPA § 559.72;

D. Actual and punitive damages pursuant to FCCPA § 559.77(2);

E. Statutory damages of $1,000.00 pursuant to FCCPA § 559.77(2);

F. Costs and reasonable attorney's fees pursuant to FCCPA § 559.77(2);

G. Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

H. Any other relief that this Honorable Court deems appropriate.

Respectfully submitted this 5th day of April 2019.

B*/s/ Aaron /s/Aaron M. Swift*

Aaron M. Swift, Esq.
Trial Counsel
FBN 0093088
Swift,Isringhaus, and Dubbeld, P.A.
10460 Roosevelt Blvd. N., Suite 313
St. Petersburg, FL 33716
Telephone: (727) 490-9919
Facsimile: (727) 255-5332
Email: aswift@swift-law.com
*Attorney for Plaintiff,*
*Brii Coleman*